## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| **TROLL COMMUNICATIONS, LLC,** | : | Case Nos. 03-11508 (KJC) |
| *et al.*, | : | |
| Debtors. | : | |
| | : | |
| Michael B. Joseph, as Chapter 7 Trustee | : | |
| for Troll Communications, LLC, *et al.*, | : | Adversary Proceeding No. |
| Plaintiff | : | 05-51605  (KJC) |
| | : | |
| v. | : | |
| | : | |
| Lincoln E. Frank, Andrew E. Kaplan, | : | |
| Peter E. Bergen, Daniel Neuwirth, | : | |
| Curtis Thompson, Jeffrey Lucking, | : | |
| Terry Tuttle, Seth J. Lehr, Scott Perricelli, | : | |
| Quad Venture Partners SBIC, LP, Quad | : | |
| Venture Partners, LP, Quad Ventures, LLC, | : | |
| Defendants | : | |

## MEMORANDUM [1]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

### BACKGROUND

On May 16, 2003, Troll Communications, LLC and its affiliates filed voluntary petitions

for relief under chapter 11 of the United States Bankruptcy Code.[2]   The Debtors' cases were

converted to cases under chapter 7 of the United States Bankruptcy Code on July 23, 2003 (main

---

[1]   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is
a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(F), (H) and (O).

[2] Pursuant to the Order dated May 20, 2003 (main case docket no. 51), the Court granted the
Debtors' request for joint administration of the chapter 11 cases of the following debtors: Troll
Communications, LLC; Troll Holdings, Inc.; Troll Associates, LLC; Troll Book Clubs, LLC; Troll Home
Clubs, LLC; Troll Book Fairs, LLC; Troll School & Library, LLC; Troll Realty, LLC; and Troll
Publishing, LLC (collectively, the "Debtors" or "Troll").

case docket no. 207). On July 27, 2003, Michael B. Josephs (the "Trustee") was appointed as the chapter 7 Trustee of the Debtors' estates (main case docket no. 210).

The Trustee commenced this adversary proceeding on May 13, 2005. On October 7, 2005, the Trustee filed the First Amended Complaint (the "Amended Complaint")(docket no. 47). The Amended Complaint asserts four counts against the defendants.[3] Count One alleges claims for breach of fiduciary duty against the individual defendants. Count Two seeks avoidance and recovery of fraudulent transfers under 6 Del. C. § 1305(b) and 11 U.S.C. §§ 544, 550 and 551 against Quad Ventures Partners, LP. Count Three seeks avoidance and recovery of certain allegedly preferential transfers under 11 U.S.C. §§ 547, 550, and 551 against Quad Venture Partners, LP.

Before the Court are three motions to dismiss the Amended Complaint filed by the following groups of defendants: (1) Peter Bergen, Jeffrey Lucking and Curtis Thompson (docket no. 49)(the "Bergen Motion to Dismiss"), (2) Lincoln E. Frank, Andrew E. Kaplan, Daniel Neuwirth, Seth J. Lehr, Scott Perricelli, Quad Ventures Partners SBIC, LP, Quad Venture Partners, LP, and Quad Ventures LLC (docket no. 53)(the "Frank Motion to Dismiss"), and (3) Terry Tuttle (docket no. 56)(the "Tuttle Motion to Dismiss")(collectively, the "Motions to Dismiss").[4] For the reasons set forth below, the Frank Motion to Dismiss will be granted, in part,

---

[3] Count Four, which sought avoidance and recovery of certain allegedly fraudulent transfers pursuant to 6 Del. C. § 1304, and 11 U.S.C. §§ 544, 548, 550, and 551 against QVP, was withdrawn voluntarily by the Trustee in its Combined Answering Brief in Opposition to Defendants' Motions to Dismiss. (docket no. 62, at p. 2).

[4] The following references will be adopted for the purposes of this Memorandum. The Court will refer to each of the individual defendants, respectively, by his last name in his individual capacity, and collectively as the "Individual Defendants." The Court will refer to the corporate defendants as follows: Quad Ventures Partners SBIC ("QVP SBIC"), Quad Venture Partners LP ("QVP"), and Quad Ventures, LLC ("QV"). The corporate defendants will be referred to collectively as "Quad" or the "Quad Defendants."

and denied, in part, with respect to Count One and will be denied with respect to Counts Two and Three. The Bergen Motion to Dismiss and Tuttle Motion to Dismiss will be granted, but the Trustee will be granted leave to amend the Amended Complaint to set forth more specific allegations relating to a breach of fiduciary duties arising from payments made to Quad.

## FACTUAL ALLEGATIONS [5]

Troll was a publisher and direct marketer of books and educational products for use by pupils in grades Pre-K through 9. Troll distributed its products through multiple channels, including school book clubs, home continuity programs, a school library catalog, and retailers.

The June 30, 2001 financial statements.

As of June 30, 2001, according to the consolidated financial statement prepared on a "going concern basis" by Ernst & Young for Troll, Troll had a working capital deficit of approximately $16 million and a members' deficiency of approximately $55 million.[6] In addition, Troll's existing revolver credit agreement with Fleet Capital Corporation ("Fleet") was to expire on March 31, 2002. Under this agreement, Fleet provided Troll with a revolving credit line of up to $19,500,000 through October 31, 2001, and $14,500,000 thereafter through maturity. Troll was advised that it would be unable to pay all existing obligations if it did not obtain alternative sources of capital. As Ernst & Young noted in its report of independent auditors, "with these uncertainties, there is 'substantial doubt' about the Company's ability to

---

[5] The factual background is derived from the First Amended Complaint and does not constitute findings of fact.

[6] Many of the allegations in the Trustee's Amended Complaint refer broadly to "Troll" without specifying a particular debtor entity. If a particular entity was noted in the Amended Complaint, that particular entity is also noted here.

continue as a going concern."

The April 2002 Agreement and Merger.

On April 17, 2002, QV, through its subsidiary QV SBIC, acquired a 90% interest in Troll. This acquisition was made through a merger and plan agreement dated March 22, 2002. Through this agreement, the owners of 100% of the membership interests in Troll Communications, LLC ("Communications") sold their membership interests to Troll Holdings, Inc. ("Holdings"); thus, the shareholders of Holdings acquired 100% of Communications' membership interests.

Holdings formed Troll NewCo, LLC ("NewCo"), a Delaware limited liability company, for the purpose of holding Communications' equity, which in turn held the equity in the Troll Subsidiaries.[7] NewCo merged with and into Communications, such that all existing membership interests in Communications were canceled, leaving NewCo and Holdings as the 100% surviving members of Communications. As part of this transaction, Holdings issued stock to QVP SBIC and to the former owners of Communications, Willis Stein & Partners II, L.P. and Willis Stein & Partners, Dutch, L.P. (collectively, "Willis Stein"). Consequently, QVP SBIC then owned approximately 90% of Holdings' issued and outstanding shares, and Willis Stein then owned the remaining 10% of Holdings' issued and outstanding shares.[8]

In exchange for the 90% interest in Troll, QVP SBIC paid approximately $4.4 million, including transaction costs and the consideration paid to Willis Stein. The Trustee estimates that,

---

[7]The Troll Subsidiaries include Troll Associates, LLC; Troll Book Clubs, LLC; Troll Home Clubs, LLC; Troll Book Fairs, LLC; Troll School & Library LLC; Troll Realty, LLC; and Troll Publishing, LLC (the " Troll Subsidiaries").

[8]The corporate transactions described herein are taken from the Amended Complaint. While the process of the shifting ownership interests and mergers may not be entirely clear, the Trustee's assertion that, at the end of the transactions, the Quad Defendants held a 90% ownership interest in Troll, is sufficient for consideration of the Motions to Dismiss.

even adjusting for the cancellation of debt [9] by the previous owners, Communications' net asset value was negative $12.7 million when it was purchased by Holdings.

As part of the April 2002 transaction, QV entered into a management consulting agreement with Holdings to pay QV for prior consulting work in connection with Quad's acquisition of Troll and to provide consulting and other advice to Troll on an ongoing basis.

Moreover, on April 17, 2002, Communications and PNC Bank, N.A., ("PNC") entered into a revolving credit and security facility, secured by Troll's inventory and accounts receivable, whereby PNC made available a $15 million line of credit to Communications, which was to expire on April 17, 2005.

The June 30, 2002 financial statements.

According to Troll's internal financial statements dated June 30, 2002, Communications' accounts payable and other liabilities were $13.8 million. The tangible net worth of Communications was valued at negative $13.1 million. In the notes included in the consolidated financial statements dated June 30, 2002, prepared by PricewaterhouseCoopers ("PwC"), PwC indicated that Troll was in default on its credit facility with PNC because Troll violated the tangible net worth covenant in the credit agreement. In the same consolidated financial statements, PwC determined that there was "substantial doubt about Troll's ability to continue as a going concern."

Accordingly, the Trustee alleges that as of June 30, 2002, Troll was insolvent and

---

[9] As their part of the planned merger, Willis Stein forgave approximately $38.5 million in subordinated debt. Willis Stein received (a) the 10% interest in Holdings (valued at that time by the parties at $555,556), (b) a new $1 million subordinated note due to be repaid in April, 2007, and (c) $1 million cash.

remained insolvent through the time it filed its bankruptcy petition.

Additional loans and contributions to equity by Quad and LLR.

In the period between June 30, 2002, and August 20, 2002, Quad loaned approximately $5.4 million to Troll, evidenced by seven subordinated notes, convertible at the option of Quad, to fund Troll's operations. On August 20, 2002, approximately $1.5 million of Quad's debt was converted into equity in exchange for 27,000 Class A common stock in Holdings.

On September 9, 2002, pursuant to a note and warrant purchase agreement between Troll and Quad, Troll issued a new subordinated note of $4 million and stock warrants valued at $10,000 to Quad. In exchange, Quad canceled the outstanding subordinated notes of $3.9 million.

On September 23, 2002, pursuant to a securities purchase agreement, Troll issued equity (141,151 shares of Class D common stock in Holdings) to LLR Partners ("LLR") in exchange for payment (equity financing) of $7.5 million. This gave LLR a minority ownership position in Troll. Defendants, and Lehr and Perricelli were added to Holdings' board of directors as a result of this transaction.[10]

Also on September 23, 2002, Troll entered into an amended and restated management consulting agreement with Quad, and a separate management consulting agreement with LLR. The Trustee alleges that the cash proceeds from the equity transaction with LLR were used to pay QVP for the following (i) the $4 million subordinated note, plus interest in the amount of

---

[10]In the Amended Complaint, the Trustee alleges that Lehr is a partner of LLR and Perricelli is "associated with" LLR.

6

$22,591.27, and (ii) management consulting fees in the amount of $154,662.  On February 26, 2003, Troll transferred another $134,694.04 to QVP for reimbursement of expenses.

As of September 30, 2002, Troll's EBITDA (i.e., earnings before interest, taxes, depreciation and amortization) was a negative $2.6 million.  As of December 31, 2002, Troll's EBITDA was a negative $4.4 million.

On January 23, 2003, LLR and Quad entered into a mezzanine credit agreement to provide Troll with $4 million of additional capital.  Quad provided half of the initial $2 million advance to Troll. However, on January 31, 2003, Troll's reported losses for the month were $1.5 million on sales of $3.7 million.  Also, another $1.5 million in negative EBITDA was generated.

On February 12, 2003,  Troll and Scholastic, Inc. entered into a sales contract for the purchase of substantially all of Troll's assets.

In March of 2003, Troll retained Phoenix Management Services ("Phoenix") to review its operations and advise on the overall financial condition of Troll.  On April 3, 2003, Phoenix delivered a cash forecast report indicating that (a) a dramatic scaling [back] was required for survival; (b) trade vendors were unpaid and stressed; (c) a continued cash burn existed; (d) excessive inventory levels existed; (e) corporate management needed crisis management and restructuring support; and (f) corporate restructuring probably needed to be done inside a chapter 11.

On May 16, 2003, Troll filed its voluntary petition under chapter 11 of the Bankruptcy Code.

## LEGAL STANDARD FOR A MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litig.)*, 496 F.Supp. 2d 404, 407 (D.Del. 2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)(emphasis in original).

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). Fed.R.Civ.P. 8(a)(2), made applicable by Fed.R.Bankr.P. 7008, requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964 quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint need not contain detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1964-65.

8

The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002), citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). When considering a motion to dismiss, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa., ex real. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988), citing *Car Carriers,* 745 F.2d at 1107. The movant carries the burden of demonstrating that dismissal is appropriate. *Intel Corp.,* 496 F.Supp.2d at 408.

## DISCUSSION

1.    Count One – Breach of Fiduciary Duties

All three of the pending Motions to Dismiss contend that Count One of the Amended Complaint fails to state a claim against the Individual Defendants for breach of fiduciary duties. The breach of fiduciary duties claims are asserted on two grounds. First, the Trustee attacks the Individual Defendants' decision to use the proceeds of the September 23, 2002, LLR equity buy-in to pay debts owed to Quad.[11] Second, the Trustee argues that the Individual Defendants failed to take reasonable actions to prevent the "ever-deepening insolvency of the Troll entities." (*See* Plaintiff's Combined Answering Brief, docket no. 62, at 19).[12]

The Defendants move to dismiss Count One of the Amended Complaint, arguing, *inter*

---

[11]In the Amended Complaint's description of the parties, the Trustee alleges that Frank, Kaplan, and Neuwirth were the partners of Quad.

[12]Count One of the Amended Complaint is not expressly styled as a claim of "deepening insolvency;" however, it is alleged that the defendants "caused the corporate life of the debtors to be artificially extended beyond the point of economic viability." (Amended Complaint, ¶63.)

*alia*, that the business judgement rule protects the Individual Defendants from claims for breach

of fiduciary duty, and that Delaware does not recognize a cause of action based upon "deepening

insolvency."[13] The Trustee argues that the allegations in the Amended Complaint are sufficient

to rebut the presumption afforded by the business judgment rule, thereby shifting to the

Defendants the burden of proving the entire fairness of the transaction at issue. The Trustee also

argues that "deepening insolvency" is a valid cause of action that would be recognized by the

Delaware state courts.

(a)    The Directors' Breach of the Duty of Loyalty arising from the Payments to Quad.

The Individual Defendants argue that claims, such as those asserted in Count One, which

question the board of directors' decision-making process are protected by the business judgment

rule. The business judgment rule has been described in Delaware case law as follows:

> The rule "is a presumption that in making a business decision the directors of a
> corporation acted on an informed basis, in good faith and in the honest belief that
> the action taken was in the best interests of the company." Therefore, the
> judgment of a properly functioning board will not be second-guessed and "absent
> an abuse of discretion, that judgment will be respected by the courts." Because a
> board is presumed to have acted properly, "the burden is on the party challenging
> the decision to establish facts rebutting the presumption."

*Orman v. Cullman*, 794 A.2d 5, 19-20 (Del. Ch. 2002)(citations omitted). The United States

District Court for the District of Delaware likewise recognized the import of the business

judgment rule: "in the absence of facts showing self-dealing or improper motive, a corporate

officer or director is not legally responsible to the corporation for losses that may be suffered as a

---

[13]Although the record does not reflect an express agreement by the parties that Delaware law
applies to the claims in this adversary proceeding, all of the parties cite to Delaware law in support of
their respective arguments throughout their submissions. In considering the Motions to Dismiss, I will,
therefore, apply Delaware law.

result of a decision that an officer made or that directors authorized in good faith."  *Continuing Creditors' Committee of Star Telecomm., Inc. v. Edgecomb*, 385 F.Supp.2d 449, 458 (D.Del. 2004) quoting *Gagliardi v. Tri-Foods Intern., Inc.*, 683 A.2d 1049, 1051 (Del.Ch. 1996).  The *Star Telecomm* Court observed that well-known public policy reasons underlying the rule are (i) to prevent courts from 'injecting themselves into a management role for which they were neither trained nor competent" and (ii) to "encourage others to assume entrepreneurial and risk-taking activities by protecting them against personal liability when they have performed in good faith and with due care, however unfortunate the consequence."  *Star Telecomm.,* 385 F.Supp.2d at 458 quoting Duesenberg, *The Business Judgment Rule and Shareholder Derivative Suits: A View from Inside*, 60 Wash.U.L.Qu. 311, 314 (1982).

To survive a motion to dismiss under Rule 12(b)(6), the Trustee must "plead around the business judgment rule."  *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005).[14]  A plaintiff can rebut the presumption of the business judgment rule by showing that "the board of directors, in reaching its challenged decision, violated any one of its triad of fiduciary duties: due care, loyalty, or good faith."  *Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001).

In challenging the payments to Quad, the Trustee alleges that the Individual Defendants breached their duty of loyalty.  "The duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director,

---

[14]The *Tower Air* Court noted that "Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6). . . . A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however."  *Tower Air*, 416 F.3d at 238 (citations omitted).

11

officer or controlling shareholder and not shared by the stockholders generally." *Star Telecomm.*, 385 F.Supp.2d at 460 quoting *Cede & Co. v. Technicolor*, 634 A.2d 345, 361 (Del. 1993) (internal citation omitted). "To show that a director was interested, it is usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders." *Id.*, citing *Orman*, 794 A.2d at 23.

In the Amended Complaint, the Trustee alleges that Frank, Kaplan and Neuwirth were members of the board of directors for Holdings, the board of managers for Communications, and partners of Quad who had "complete control over and directed the policies and affairs of Troll." (Amended Complaint, ¶¶ 5, 6, 7, and 57). The Trustee further alleges that Bergen, another member of Holdings' board of directors and Communications' board of managers, was hired by Frank, Kaplan and Neuwirth, was beholden to their interests, and lacked independence. (Amended Complaint, ¶59). With respect to the payments to Quad, the Trustee alleges:

> Defendants Frank, Kaplan, Neuwirth and Bergen breached their fiduciary duty of loyalty to Communication's [sic] creditors by authorizing the distribution of the proceeds of LLR's equity buy-in to QVP ostensibly to pay off a subordinated promissory note as well as sums due to QVP under a consulting agreement with Holdings. The controlling directors, Frank, Kaplan and Neuwirth, were on both sides of this transaction and therefore must prove that the use of these funds to pay off subordinated insider debt was entirely fair to Communication's [sic] unsecured creditors. Bergen was beholden to Frank, Kaplan and Neuwirth and failed to undertake an independent and good faith review of the merits of using the cash influx to pay off this insider debt at a time when Troll was unable to earn enough money from its sales to fund current operations.

(Amended Complaint, ¶61). The facts as pled by the Trustee allege that a majority of the board of director members (Frank, Kaplan and Neuwirth) had a financial interests on both sides of the

transaction between Troll and Quad.[15]  He has also alleged that the remaining board member

(Bergen) was not independent.  With these allegations, the Trustee has pled facts sufficient to

question the disinterestedness of a majority of the board of directors.  Therefore, the business

judgment rule presumption may not be used as a basis to dismiss Count One under Rule 12(b)(6).

The Motions to Dismiss will be denied, in part, to the extent the Motions seek to dismiss that

portion of Count One relating to the directors' breach of the duty of loyalty for transferring

monies to Quad.

      (b)     The Officers' Breach of Fiduciary Duties arising from the Payments to Quad.

Defendants Lucking, Thompson and Tuttle argue that the Amended Complaint fails to

state a claim against them because (1) officers of the Debtor do not owe any fiduciary duty to

creditors; and (2) even assuming, *arguendo*, that the officers owed fiduciary duties to the

creditors, the Amended Complaint does not allege that they have breached any fiduciary duties.

Other courts have recognized that, under Delaware law, officers and directors owe a

fiduciary duty to creditors once a corporation becomes insolvent.  *The Off'l Comm. of Unsecured*

*Creditors of High Strength Steel, Inc. v. Lozinski (In re High Strength Steel, Inc.)*, 269 B.R. 560,

---

[15]Some defendants argue that Trustee has not alleged that a *majority* of the board members lacked independence in connection with the challenged transfers to Quad.  In this argument, the defendants allege that there were six members on the board of directors, three of whom (Bergen, Lehr and Perricelli) were not partners of Quad and were not on both sides of the challenged transaction. However, upon viewing the facts in the light most favorable to the Trustee, as is required in deciding a motion to dismiss, the Trustee has alleged that the Lehr and Perricelli were not board members at the time decisions were made regarding payments to Quad.  Instead, the Trustee has alleged that three out of four board members had interests on both sides of the challenged transaction, which may defeat the motion to dismiss this part of Count I.  Further, even assuming Lehr and Perricelli were board members at the time it was decided that payments should be made, the Trustee alleges that a fourth board member, Bergen, was beholden to Frank, Kaplan, and Neuwirth, thereby questioning the independence of his decision-making.  *See Orman*, 794 A.2d at 24.

569 (Bankr.D.Del. 2001) citing *LaSalle Nat'l Bank v. Perelman*, 82 F.Supp.2d 279, 290 (D.Del.

2000). *See also Tower Air*, 416 F.3d at 238, n. 12 quoting *Arnold v. Soc'y for Savings Bancorp.,*

*Inc.,* 678 A.2d 533, 539 (Del. 1996)(noting that directors and officers should be treated as

comparable fiduciaries). The Amended Complaint alleges:

> Bergen, Lucking, Thompson and Tuttle were officers of Communications during
> the Relevant Insolvency Period and were likewise beholden to Frank, Kaplan and
> Neuwirth and therefore lacked independence in managing the affairs of the
> debtors. During each officer's respective tenure, he aided and abetted Frank,
> Kaplan, Neuwirth, Lehr and Perricelli in the conduct complained of herein by
> executing corporate policy that he knew, or should have known, was detrimental
> to the interests of the debtors' creditors.

(Amended Complaint, ¶60). Viewing the Amended Complaint in the light most favorable to the

Trustee, this paragraph alleges that the officers violated their duty of loyalty because the officers

were beholden to Frank, Kaplan, and Neuwirth and allowed those interests to take precedence

over the best interests of the corporation, its shareholders, and (because of the insolvency) its

creditors.

Moreover, to state a claim against the officers for aiding and abetting the other

Defendants' breach of fiduciary duties, the Trustee must show: (i) the existence of a fiduciary

relationship; (2) a breach of that relationship; and (3) knowing participation by the defendant in

the fiduciary's breach. *IT Litigation Trust v. D'Aniello (IT Group, Inc.)*, 2005 WL 3050611, *13

(D.Del. Nov. 15, 2005) citing *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 989 (Del.

Ch. 2000). As discussed above, the Amended Complaint adequately states a claim that the

directors (Frank, Kaplan, and Neuwirth, who were also alleged partners in Quad) breached their

duties of loyalty by authorizing certain payments to Quad, and the Amended Complaint can be

read to allege that some officers knowingly participated in the payments. The Amended

14

Complaint's allegations regarding the officers are vague and lack sufficient detail about which officers, if any, knowingly participated in the payments to Quad.    The Motions to Dismiss will be granted, in part, to the extent the officers  request dismissal of Count One against Lucking, Thompson and Tuttle for breaching a fiduciary duty, or aiding and abetting in the breach of fiduciary duty, in connection to the payments to Quad.  The Trustee shall be granted leave to amend the Amended Complaint to specify which officers breached, or aided and abetted in a breach, of the duty of loyalty by participating in making the challenged payments to Quad.

Bergen, however, must be treated separately.  The Amended Complaint alleges that he participated in the board of directors' authorization of the distribution to Quad.  (Amended Complaint, ¶61).  This is sufficient to support of claim of "knowing participation" in the other directors' breach of the duty of loyalty regarding the challenged transfer.  This portion of Count One will not be dismissed against Bergen.

  (c) <u>Deepening Insolvency</u>

The Amended Complaint does not explicitly assert a separate cause of action for "deepening insolvency."  However, the Trustee's second theory in Count One is, in substance, a claim of  deepening insolvency.  The Amended Complaint alleges that the defendants "further breached their fiduciary duties to the creditors of Communication by failing to take prompt corrective action in the face of Communication's rapidly declining financial situation."  (Amended Complaint, ¶ 63).[16]  The Trustee also alleges that "[b]y failing to take such prompt actions, the defendants caused the corporate life of the debtors to be artificially extended beyond

---

[16]The Trustee does not specify which fiduciary duty has been breached in causing the deepening insolvency, and only alleges that a majority of the directors were "not disinterested."

the point of economic viability." (*Id.*, ¶ 64). According to the Amended Complaint, the

Defendants' failure to act caused the Debtors' trade debt to increase by at least $5 million, which

is alleged to be "real and direct damage to Communications' creditors." (*Id.*)

In 2007, after the filing of the Amended Complaint (and after argument on the Motions to

Dismiss), the Delaware Supreme Court affirmed, without opinion, a lengthy 2006 decision by the

Delaware Chancery Court, extinguishing - - with verve - - any notion that deepening insolvency

is a valid cause of action under Delaware law.[17] *Trenwick Am. Litig. Trust v. Billett*, 931 A.2d

438 (Del. 2007) *aff'g Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 204-07

(Del. Ch. 2006). *See also Off'l Comm. of Unsecured Creditors v. Tennenbaum Capital*

*Partners, LLC (In re Radnor Holdings Corp.)*, 353 B.R. 820, 842 (Bankr.D.Del. 2006)

(recognizing rejection of "deepening insolvency" as a cause of action under Delaware law). The

Chancery Court wrote:

> Delaware law imposes no absolute obligation on the board of a company that is
> unable to pay its bills to cease operations and to liquidate. Even when the
> company is insolvent, the board may pursue, in good faith, strategies to maximize
> the values of the firm. . . . If the board of an insolvent corporation, acting with due
> diligence and good faith, pursues a business strategy that it believes will increase
> the corporation's value, but that also involves the incurrence of additional debt, it
> does not become a guarantor of that strategy's success. That the strategy results in
> continued insolvency and an even more insolvent entity does not in itself give rise
> to a cause of action. Rather, in such a scenario, the directors are protected by the
> business judgment rule. To conclude otherwise would fundamentally transform
> Delaware law.

*Trenwick*, 906 A.2d at 204-05. The Chancery Court noted that rejecting deepening insolvency as

_____

[17]Said the Vice Chancellor: "I reach a result consistent with a growing body of federal
jurisprudence, which has recognized that those federal courts that became infatuated with the concept,
did not look closely enough at the object of their ardor." *Trenwick*, 906 A.2d at 206 [citations contained
in n. 105 omitted].

a cause of action "does not absolve directors of insolvent corporations of responsibility," because

a plaintiff retains the ability to bring an action for breach of fiduciary duty or fraud. *Id.*, at 205.

In *Seitz v. Detweiler, Hershey and Assoc. P.C. (In re CITX Corp., Inc.)*, the Third Circuit

Court of Appeals rejected the use of deepening insolvency as a theory of damages, writing:

> "[t]he deepening of a firm's insolvency is not an independent form of corporate
> damage.  Where an independent cause of action gives a firm a remedy for the
> increase in its liabilities, the decrease in fair asset value, or its lost profits, then the
> firm may recover, without reference to to the incidental impact upon the solvency
> calculation."

*CITX,* 448 F.3d 672, 678 (3d Cir. 2006) quoting Sabin Willett, *The Shallows of Deepening*

*Insolvency*, 60 Bus. Law. 549, 575 (2005).

Because deepening insolvency has been rejected as a valid cause of action or a theory of

damages under Delaware law, the Motions to Dismiss Count One will be granted in relation to

the request for relief based upon the theory of deepening insolvency.[18]

2. Count Two and Three– Avoidance of Fraudulent and Preferential Transfers.

In Count Two, the Trustee seeks to avoid and recover three specific transfers made from

Troll to QVP: (i) a transfer in the amount of $4,022,591.27 made on September 24, 2002 in

repayment of an outstanding subordinated promissory note; (ii) a transfer in the amount of

---

[18]The dismissal of that part of Count One based upon deepening insolvency leaves standing only
the allegations related to the directors' breach of the duty of loyalty arising from the challenged payments
to Quad.  In the Motions to Dismiss, the directors also argue that Count One should be dismissed based
upon the exculpation provision included in the certificate of incorporation of Holdings that protects
directors from liability based upon the a breach of the duty of care. *See* 8 Del.C. §102(b)(7).  Because
the exculpatory provision does not apply to claims based upon the breach of the duty of loyalty, it does
not provide a basis for dismissal of the remaining claims in Count One. *See Production Resources
Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 794-95 (Del. Ch. 2004) ("[B]y the statute's own terms,
an exculpatory charter provision does not insulate directors from liability for various acts of disloyalty
towards the firm.")

$154,662.00, also made on September 24, 2002, as payment of consulting fees; and (iii) a

transfer in the amount of $134,694.04 made on February 26, 2003 as payment for reimbursement

of QVP's expenses.   The Trustee challenges these transfers as fraudulent conveyances pursuant

to §544 of the Bankruptcy Code and §1305(b) of the Delaware Code.[19]

In Count Three, the Trustee seeks to avoid and recover the same three transfers to QVP,

but under that theory that the transfers are avoidable as preference payments under §547 of the

Bankruptcy Code because the payments were made to an insider one year prior to filing the

bankruptcy petition. *See* 11 U.S.C. §547(b).[20]

In the Frank Motion to Dismiss, the Quad Defendants move to dismiss Counts Two and

---

[19]Section 544(b) of the Bankruptcy Code states in pertinent part that the Trustee "may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 502 of this title . . . . 11 U.S.C. §544(b).

Section 1305(b) of the Delaware Code states in pertinent part: "A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent." 6 Del.C. §1305(b).

[20]Section 547(b) of the Bankruptcy Code provides:
(b)     Except as provided in subsection (c) and (i) of this section, the Trustee may avoid any transfer of an interest of the debtor in property - -
    (1)     to or for the benefit of a creditor
    (2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3)     made while the debtor was insolvent;
    (4)     made - -
        (A)     on or within 90 days before the date of the filing of the petition; or
        (B)     between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5)     that enables such creditor to receive more than such creditor would receive if - -
        (A)     the case were a case under chapter 7 of this title;
        (B)     the transfer had not been made; and
        (C)     such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. §547(b).

Three by arguing that the Trustee has not alleged sufficient facts regarding Troll's insolvency at the time of the transfers. Moreover, QVP moves to dismiss Count Two for failure to plead the fraud claim with the specificity required by Fed.R.Civ.P. 9(b).[21]

    (a)   Insolvency.

To state a fraudulent transfer claim under Delaware Code §1305(b) and a preferential transfer claim under Bankruptcy Code §547(b), the Trustee must allege that the Debtors were insolvent at the time of the transfers. The Quad Defendants argue that the Trustee's allegations of insolvency are inadequate because the allegations (i) rely on selective pieces of financial data that are either misstated or misleading, (ii) are contradicted by the information set forth in the financial statements referred to in the Amended Complaint, and (iii) are refuted by other allegations in the Amended Complaint relating to equity investments made at the time of the transfers.[22] According to the Quad Defendants, the facts contained within the Amended Complaint amount to only a "mere suspicion" of insolvency, which the Quad Defendants claim is insufficient to sustain the causes of action in Counts Two and Three. In response, the Trustee contends that he has alleged insolvency sufficiently, and resists the level of pleading burden that the Defendants seek to impose upon him.

An entity is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). The Amended Complaint

---

[21]Fed.R.Civ.P. 9(b), made applicable hereto by Fed.R.Bankr.P. 7009, provides in part, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

[22]With respect to the preference claims in Count Three, QVP also argues that the Trustee may not avail himself of the presumption of insolvency set forth in Bankruptcy Code §547(f) because the September 24, 2002 transfers were more than ninety days prior to the petition date.

contains a number of factual allegations reflective of insolvency. For example, the Trustee

supports the general allegation that Troll was insolvent beginning June 2002 (prior to the

September 2002 transfers), and continuing through the bankruptcy filing, with specific fact

allegations:

> According to Troll's internal financial statements, as of June 30, 2002,
> Communications' accounts payable and other liabilities were $12.8 million. The
> tangible net worth of Communications was valued at a negative $13.1 million.
> The going concern business qualification given by PWC rendered the company's
> goodwill valueless, making tangible net worth the guidepost for determining the
> company's insolvency. By this standard, and by the standard of the company's
> cash flow, Troll was insolvent on June 30, 2002. . . . Troll was never able to climb
> out of its insolvency right through the time it filed its bankruptcy petition.
> Additional funds were provided by its shareholders, but those funds could only be
> used to cover some of the company's losses, they were not sufficient to make the
> company solvent.

(Amended Complaint, ¶26). Accepting allegations in the Amended Complaint as true and

drawing all reasonable inferences in favor of the Trustee, the financial data contained in the

Amended Complaint support the Trustee's allegations that Troll had a negative net worth and

was unable to meet maturing obligations. Although the Quad Defendants take issue with these

allegations, the Trustee has adequately pled facts supporting allegations of insolvency and will be

permitted to proceed with discovery. "To survive a motion to dismiss, a plaintiff only has to

allege sufficient facts, not prove them." *Foss Mfg. Co., Inc. v. Foss (In re Felt Mfg Co., Inc.)*,

371 B.R. 589, 637 (Bankr.D.N.H. 2007) quoting *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d

Cir. 1999). *See Off'l Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*,

326 B.R. 301, 306-07 (Bankr.D.Del. 2005)(deciding that allegations that a debtor was

undercapitalized from its inception and did not have sufficient assets to at the time of the

challenged transfers in order to satisfy obligations adequately alleged insolvency).

20

(b)     Failure to plead fraud with particularity required by Fed.R.Civ.P. 9(b).

The Quad Defendants also argue that, in connection with the allegations under § 1305(b) of the Delaware Code, the Trustee has not identified a creditor whose claim arose before the transfers were made. QVP contends that without such factual allegations, the Trustee has averred nothing more than the statutory elements, which is insufficient to survive a motion to dismiss. *See OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698-99 (Bankr.D.Del. 2005) (dismissing fraudulent transfer count when defendant recited only statutory elements without any supporting factual information).

The Trustee argues that Count Two is sufficient to satisfy Rule 9(b). The Trustee points out that, in addition to nearly fifty paragraphs of factual allegations describing the circumstances surrounding the transfers that were incorporated by reference into the fraudulent transfer counts, the Amended Complaint identifies the transfers by date and amount, and the basis for the payment. The Amended Complaint also generally alleges that there were unsecured creditors whose claims arose before the challenged transfers. (Amended Complaint, ¶71).

Here, the Trustee has satisfied his pleading burden under Rule 9(b). Greater liberality is afforded in pleading fraud in the bankruptcy setting because it is often a trustee, a third party outsider to the transaction, who must plead fraud based on secondhand knowledge for the benefit of the estate and its creditors. *In re O.P.M. Leasing Services, Inc.*, 32 B.R. 199, 203 (Bankr.S.D.N.Y., 1983). The Quad Defendants argue that the Trustee should not be allowed relaxed pleading standards because he has been in possession of Troll's books and records for some time. I need not decide whether the Trustee should be permitted greater liberality in pleading fraud, however, because the Amended Complaint provides sufficient factual allegations.

21

In addition to reciting the language contained in the statutes, the Trustee has identified the specific transfers by date and amount, claimed that the transferees were insiders, supplied specific allegations regarding Troll's financial status, argued about the value, or lack thereof, that was received in the exchange, and identified the applicable state law with respect to the §544 claim. As for QVP's contention that no specific creditor has been identified, "for the purpose of Rule 12(b)(6), courts do not generally require a trustee to plead the existence of an unsecured creditor by name." *IT Group*, 2005 WL 3050611, *15 quoting *Pardo v. Avanti Corporate Health Sys., Inc. (In re APF Co.)*, 274 B.R. 634, 639 (Bankr.D.Del., 2001).

3.   The Trustee's Request to Further Amend the Amended Complaint.

Finally, Defendants QV and QVP SBIC argue that the Amended Complaint does not assert any causes of action against them and, therefore, fails to state a claim against them. The Trustee concedes this fact, and seeks leave to further amend the Amended Complaint pursuant to Fed.R.Civ.P. 15, made applicable hereto by Fed.R.Bankr.P. 7015, to add QVP SBIC as a defendant in Count One, and QV as a defendant in Counts Two and Three. The Quad Defendants do not object to the addition of QV to Counts Two and Three, but do object to the addition of QVP SBIC to Count One.

The Trustee argues that as the majority shareholder of Holdings and a controlling shareholder of Troll, QVP SBIC owes fiduciary duties to creditors and should be included as a defendant in Count One. The Quad Defendants, however, oppose the Trustee's request to add QVP SBIC as a defendant to Count One, arguing that the Trustee cannot meet the requirements for relation back of the amendment under Rule 15(c). The Trustee's request with respect to QVP SBIC referred to Rule 15, generally, and did not discuss the applicability of the relation back

22

provisions of Rule 15(c). To provide a full opportunity to address these issues, a briefing schedule for further submissions regarding the Trustee's request to amend will be set by the order attached hereto.

## III. CONCLUSION

For the reasons set forth above, the Motions to Dismiss will be treated as follows:

(1)     the Bergen Motion to Dismiss will be treated as follows:

        (a)     the Bergen Motion to Dismiss will be GRANTED, *in toto*, as to defendants Lucking and Thompson, although the Trustee will be given an opportunity to amend the Amended Complaint to include, if he is able, specific allegations regarding Lucking's and Thompson's alleged breach of fiduciary duties with respect to the payments to Quad; and

        (b)     the Bergen Motion to Dismiss will be GRANTED, in part, as to defendant Bergen with respect to the portion of Count One based upon any claim of deepening insolvency, but DENIED as to the portion of Count One alleging a breach of the duty of loyalty claim arising out of payments to Quad;

(2)     the Tuttle Motion to Dismiss will be GRANTED *in toto*, although the Trustee will be given an opportunity to amend the Amended Complaint to include, if he is able, specific allegations regarding Tuttle's alleged breach of fiduciary duties with respect to the payments to Quad;

(3)     the Frank Motion to Dismiss will be treated as follows:

        (a)     the Frank Motion to Dismiss will be GRANTED as to the portion of

23

Count One based upon any claim of deepening insolvency;

(b)    the Frank Motion to Dismiss will be DENIED as to the portion of Count One alleging a breach of the duty of loyalty claim arising out of payments to Quad; and

(c)    the Frank Motion to Dismiss will be DENIED as to Counts Two and Three;

(4)    Count Four is withdrawn by agreement of the Trustee; and

(5)    The Trustee's request to amend the Amended Complaint under Fed.R.Civ.P. 7015 will be GRANTED, by agreement, to add QVP as a defendant to Counts Two and Three. A briefing schedule will be set in the Order accompanying this Memorandum to further consider the Trustee's request to amend the Amended Complaint under Fed.R.Bankr.P. 7015 to add QVP SBIC as a defendant to Count One.

An appropriate order will be entered.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: April 2, 2008

24